(No. 29984.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ROGER TOUHY, Appellant.

*Opinion filed March 19, 1947—Rehearing denied May 19, 1947.*

20

CHARLES P. MEGAN, of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and RUDOLPH L. JANEGA, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

February 24, 1934, a jury in the criminal court of Cook county found Roger Touhy guilty of the crime of kidnapping John Factor for ransom and fixed his punishment at ninety-nine years' imprisonment in the penitentiary. Judgment was rendered on the verdict. Touhy prosecuted a writ of error from this court to the criminal court. On June 14, 1935, the judgment was affirmed and, on October 2, 1935, a petition for rehearing was denied. (*People* v. *Touhy,* 361 Ill. 332.) Thereafter, on February 15,

1938, Touhy presented his petition for a writ of *habeas corpus* to this court. (*People ex rel. Touhy* v. *Ragen*, (No. 24616.) The petition was denied on February 18, 1938. The United States Supreme Court, on March 28, 1938, denied his petition for a writ of *certiorari* to this court. (*Touhy* v. *Ragen, Warden*, 303 U. S. 657.) On August 10, 1946, Roger Touhy filed in the criminal court of Cook county a petition for writ of error *coram nobis* seeking a new trial. The People interposed a plea in bar setting up the five years' limitation period and, also, a demurrer. The plea and the demurrer were both sustained, and Touhy's petition dismissed. This appeal followed.

We deem unnecessary a narration of all the detailed facts alleged in the petition. Our opinion in *People* v. *Touhy*, 361 Ill. 332, contains an exhaustive review of the evidence adduced upon the trial. John Factor identified Roger Touhy as one of the kidnappers. The latter's conviction rested, in large measure, upon the testimony of Factor, Isaac Costner and Walter Henrichsen. The principal ground urged by Tuohy in his petition for a writ of error *coram nobis* is that the testimony of Factor, Costner and Henrichsen was false. In particular, the petition alleges that, in October, 1934, Factor told Thomas C. McConnell, a Chicago lawyer, he had not been able to see anyone during the holding for ransom on account of a bandage over his eyes but, nevertheless, swore to the identification of Touhy. This alleged statement is consistently referred to in the petition and in Touhy's briefs as a confession. Additional allegations are that Factor's statement to McConnell did not come to the knowledge of Touhy's counsel until October, 1945, and to the knowledge of Touhy himself still later. Touhy also alleges that Costner's testimony upon the trial was false. Henrichsen is now deceased, and statements are made in Touhy's brief that "his evidence was unimportant" and "The false testimony of Henrichsen was not of great significance."

22

The gist of the principal contentions made by Touhy's petition is that his conviction rests upon Factor's false identification of him as one of the perpetrators of the kidnapping and the supporting testimony of Costner, also charged to be false, and upon the asserted arbitrary action of the trial judge in refusing to allow a reasonable time for Touhy's counsel to prepare for the argument of his motion for a new trial. As stated in Touhy's brief, "This confession of perjury by the principal witness [Factor] is the central point of the case. The newly discovered evidence is 'of such character as completely to undermine the entire case on which the prosecution was based'."

An examination of the petition for *habeas corpus* filed in this court, more than eight years before instituting the present action, discloses that Touhy alleged Factor's testimony in the trial upon the indictment for kidnapping was false, and, also, that Costner committed perjury upon the trial. He averred that knowledge of the facts alleged first came to him immediately preceding February 14, 1938. The petition for *habeas corpus* was supported by eleven affidavits. The present petition for a writ of error *coram nobis* is not supported by a single affidavit.

As recounted, the People filed a plea in bar placing reliance upon section 72 of the Civil Practice Act and, also, a demurrer averring that the allegations of the petition, to the effect that Touhy's conviction resulted from the contrivances of the prosecuting witness, John Factor, and the false testimony of Factor and Costner are not matters or grounds for relief in the present action; that allegations on rulings with respect to the evidence, the time for considering the motion for a new trial and that new evidence has been discovered are not matters relievable by an action in the nature of a writ of error *coram nobis* and, further, that allegations as to violations of Touhy's rights in the criminal trial are not within the purview of the matter for which the writ lies.

Although petitioner captions his pleading a "Petition for Writ of Error Coram Nobis," we treat it as a motion in the nature of a writ of error *coram nobis.* Eighty years ago, in 1867, this court, in *McKindley* v. *Buck,* 43° Ill. 488, speaking through Mr. Justice Breese, observed: "This old writ [writ of error *coram nobis*] has never been in use in this State, and it has fallen into desuetude even in England. Its place is most effectually supplied by the more summary proceedings, by motion in the court where the error in fact occurred." Shortly after this decision was rendered, the General Assembly expressly abolished the common-law writ of error *coram nobis.* (Laws of 1871-72, p. 348.) Its abolition appeared as section 66 in an act entitled, "An Act in regard to practice in courts of record." The Practice Act of 1907, as did earlier statutes, declared "The writ of error coram nobis is hereby abolished," (Smith-Hurd Stat. 1933, chap. 110, par. 89,) and section 72 of the Civil Practice Act, now in force, (Ill. Rev. Stat. 1945, chap. 110, par. 196,) provides: "The writ of error coram nobis is hereby abolished, and all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice. When the person entitled to make such motion shall be an infant, non compos mentis or under duress, at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years." The power of the legislature to abolish the common-law writ of error *coram nobis* is not open to question. "An Act to revise the law in relation to the common law," approved March 5, 1874, ordains that the common law of England, so far as applicable and of a general nature, and all statutes or acts of the British parliament made in

aid of, and to supply defects of, the common law, prior to the fourth year of James the First, (with certain exceptions not material here,) and which are of a general nature and not local to that kingdom, "shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." (Ill. Rev. Stat. 1945, chap. 28.) The legislative authority to abolish the common-law writ of error *coram nobis* has been repeatedly exercised.

Touhy contends that the five years' limitation period in section 72 of the Civil Practice Act is inapplicable to criminal cases. This contention and the supporting argument are based upon the fallacious premise that proceedings upon motions in the nature of a writ of error *coram nobis* are criminal proceedings when the motions are sequels to judgments rendered in criminal cases. Touhy does not make the contention that section 72 of the Civil Practice Act is unconstitutional but urges that an interpretation applying the statute to petitions or motions in the nature of a writ of error *coram nobis* in criminal cases would render the section unconstitutional. The precise point advanced is that if section 72 applies to criminal proceedings, it would violate section 13 of article IV of our constitution, providing that no act shall embrace more than one subject and that it shall be expressed in the title.

The purpose of the writ of error *coram nobis* at common law, and of the motion substituted for it by section 72, is to bring before the court rendering the judgment matters of fact not appearing of record, which, if known at the time the judgment was rendered, would have prevented its rendition. (*Linehan* v. *Travelers Ins. Co.* 370 Ill. 157; *Chapman* v. *North American Life Ins. Co.* 292 Ill. 179; *Cramer* v. *Illinois Commercial Men's Ass'n,* 260 Ill. 516.) Illustrative of such matters are the disability of the parties to sue or defend, namely, death of one or more of the parties, death of a joint party, infancy, coverture and insanity, the failure of the clerk to file a plea or answer,

and the omission to interpose, through fraud, duress or excusable mistake and without negligence on the part of the defendant, a valid defense existing in the facts in the case. (*Jacobson* v. *Ashkinaze,* 337 Ill. 141; *Marabia* v. *Mary Thompson Hospital,* 309 Ill. 147; *Chapman* v. *North American Life Ins. Co.* 292 Ill. 179.) On the other hand, the motion in the nature of a writ of error *coram nobis* does not lie to determine a question of fact which has been adjudicated, even though decided wrongly, nor for alleged false testimony at the trial nor for newly discovered evidence. *People* v. *Drysch,* 311 Ill. 342.

A motion in the nature of a writ of error *coram nobis* is an appropriate remedy in criminal cases, as well as civil. The statute contemplates the filing of a motion or petition in the nature of a writ of error *coram nobis* in the first instance in the court rendering the judgment assailed. The motion or petition is the filing of a new action and is civil in its nature. (*People* v. *Dabbs,* 372 Ill. 160; *People ex rel. Courtney* v. *Green,* 355 Ill. 468.) The statutory substitute, namely, a petition or motion in the nature of a writ of error *coram nobis* has been adjudged an appropriate remedy in criminal cases, as well as civil, and lies to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance of the accused and without negligence on his part, he has been deprived of a defense which he could have used on his trial, and which, if known to the court, would have prevented conviction. (*People* v. *Dabbs,* 372 Ill. 160; *People* v. *Green,* 355 Ill. 468.) In *People* v. *Crooks,* 326 Ill. 266, this court said: "The writ of error *coram nobis,* or a motion under said statute, [section 89 of the Practice Act of 1907,] is an appropriate remedy in criminal cases as well as in civil cases. * * * The sufficiency of the motion, which is regarded as a declaration in a writ of error *coram nobis,* or a motion under the statute, must be raised upon demurrer, plea of *nullo est erratum,* by motion to dismiss,

by pleading special matter in confession and avoidance, or by making an issue of fact by traversing the declaration. [Citations.] In this State the issue of fact may be made, and is generally made, by affidavits in support of the motion and by counter-affidavits denying the facts set up in the motion and affidavits in support thereof, in which case the burden of proof is upon the party making the motion to prove his facts alleged by a preponderance of the evidence. * * * The proceedings in a criminal case are civil in their nature, and the burden is upon the accused to prove his allegations by a preponderance of the evidence." Again, in *People* v. *Green*, 355 Ill. 468, this court declared that section 89 of the Practice Act did not abolish the essentials of the proceeding under the common-law writ of error *coram nobis*, but that errors such as might have been corrected by the old writ may now be reached by a motion or petition, saying, "It is generally recognized that the proceedings under a motion or petition in the nature of a writ of error *coram nobis* are civil in their nature," and that the statutory motion substituted for the writ of error *coram nobis* is an appropriate remedy in criminal as well as civil cases. This pertinent observation was added, "Since the judgment entered upon such proceeding is final and the proceeding is civil in its nature, either the State or the defendant is entitled to a review of the judgment of the court entered on such motion or petition."

The common law writ of error *coram nobis* and the motion substituted for the old writ by section 72 of the Civil Practice Act are essentially civil in character. This being so, the contention that the present cause is a criminal proceeding cannot stand, and the argument that section 72 is inapplicable to the motion when employed in the criminal court of Cook county must, likewise, fall. We adhere to our decision in *People* v. *Rave*, 392 Ill. 435, that the five years' limitation under section 72 of the Civil Practice Act applies to all *coram nobis* proceedings. In

the *Rave case* we pointed out that the language in the concluding sentence of section 72, "When the person entitled to make such motion shall be an infant, *non compos mentis* or under duress at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years," contemplates criminal, as well as civil proceedings, because of the exclusion from the period of limitation of such time as the person entitled to make the motion may be under disability or duress. We stated that the language to the effect that the period of five years, commences at the time "of passing judgment" can have application only to a criminal case. Upon the authority of *People* v. *Rave,* 392 Ill. 435, and *People* v. *Sprague,* 371 Ill. 627, section 72 of the Civil Practice Act is an insuperable bar to Touhy's petition filed August 10, 1946. Legislative power in this regard is not now a debatable constitutional question. *Bradford Supply Co.* v. *Waite,* 392 Ill. 318.

The disposition of the demurrer to the petition was likewise correct. To the end of avoiding any misunderstanding of this opinion, we are impelled to make additional observations. The petition is not supported by affidavits of either the lawyer to whom John Factor is alleged to have stated that he committed perjury upon the trial in the kidnapping case, or of Factor himself. The allegations, so far as the alleged false testimony of Factor is concerned, are hearsay statements of the highest degree. We do not regard the allegations in the petition as having been taken as true, even for the purpose of disposing of the demurrer. The rule that facts stated in a pleading will be taken as true on a motion to strike, does not extend to conclusions drawn by the pleader. (*Kurtzon* v. *Kurtzon,* 395 Ill. 73.) Paragraph (3) of section 43 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 167,) declares, "An answer containing only defenses to the jurisdiction or in abatement shall not constitute an admission of the facts

alleged in the plaintiff's complaint." A petition, as here, based on a claim of perjury but not supported by affidavits showing the perjury, does not allege facts but merely conclusions of the pleader based on hearsay matter. Construing the allegations of the petition most favorably to Touhy, to the extent that they charge John Factor, Costner and Henrichsen with testifying falsely upon the trial, they are hearsay and cannot be said to constitute facts.

Irrespective of whether the allegations of the petition be taken as true for the sole purpose of disposing of the demurrer, the contention is not well taken that the common-law writ of error *coram nobis,* or its statutory substitute in this State, is available as a remedy for newly discovered evidence or for alleged perjured testimony. We have this day, in *People* v. *Gleitsman,* 396 Ill. 499, reaffirmed this court's adherence to the rule that a writ of error *coram nobis* does not lie to correct false testimony, nor for newly discovered evidence.

This court, in 1934, thoroughly reviewed the record upon the writ of error sued out of this court to the criminal court of Cook county seeking a reversal of the judgment of conviction on the charge of kidnapping John Factor. (*People* v. *Touhy,* 361 Ill. 332.) In 1938, we carefully considered the petition for *habeas corpus* (*People ex rel. Touhy* v. *Ragen,* No. 24616,) and the Supreme Court of the United States denied a petition for a writ of *certiorari* seeking a further review. (*Touhy* v. *Ragen, Warden,* 303 U. S. 657.) The present proceeding has received full consideration by both the trial judge and this court. In each instance, Touhy has been represented by able and experienced counsel both in the trial courts and in the courts of review.

The judgment of the criminal court of Cook county is right, and it is affirmed.

*Judgment affirmed.*