(No. 30660.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DONALD DUGAN, Plaintiff in Error.

*Opinion filed November 18, 1948.*

DONALD DUGAN, *pro se.*

GEORGE F. BARRETT, Attorney General, of Springfield, (ROBERT M. CRAIN, State Attorney, of Salem, of counsel,) for the People.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

At the April term, 1947, of the circuit court of Marion County, Donald Dugan, the plaintiff in error, was indicted and pleaded guilty to the charge of burglary and applied for probation, which was denied, and he was sentenced to from one to five years in the Illinois State Penitentiary.

At the September term, 1947, of said court, the plaintiff in error, also termed petitioner herein, filed a motion to correct errors in fact, representing in substance that if the facts contained in his motion or petition had been known to the trial court prior to sentence, the said judgment would not have been entered. It is alleged that during the course of five months prior to his plea of guilty he was subjected to threats, trickery, false promises and coercion on the part of the chief of police of the city of Centralia into committing the crime charged in the indictment and into pleading guilty when arraigned.

The facts stated in the motion are long and somewhat involved but briefly set forth the following: That on Janu-

ary 8, 1947, plaintiff in error was released from the State Penitentiary from a former conviction and two days thereafter he was called into the police station in the city of Centralia by the chief of police; that the latter asked petitioner to help him apprehend other young men suspected of committing burglaries, which petitioner refused to do; that he was warned by the chief that he would be sorry if he stayed around that town and did not co-operate with him; that petitioner then left the city and sought employment in the city of Chicago; that he failed to secure employment and returned to Centralia; that shortly after his return he was notified that the chief of police wanted to see him; and that if he did not call on the chief voluntarily, the officer would compel him to go to the police station; that, when he called, the chief proceeded to outline a plan whereby he wanted petitioner to associate with criminal suspects and to commit some crimes with them in order to assist the chief in his investigations; that the chief again threatened petitioner if he refused to co-operate with him; that the chief furnished him with money and directed him to break a window and steal some watches from a jewelry store and where to go in East St. Louis to pawn them; that he was indicted for burglary for this particular offense, but was at all times assured by the chief that he would never be punished and would never even be arrested for this crime; that he secured other pertinent information concerning crimes by associating with criminal suspects under the direction of said chief but always by intimidation, threats and coercion on the part of said law enforcing officer; that later, on the direction of the chief, he signed a confession admitting the burglary of the jewelry store and pleaded guilty, at all times being assured by the chief that he would be admitted to probation.

The detail of his statement, if true, is an amazing story of false promises, entrapment and final imprisonment caused by the deception, force, duress and unwarranted

action of a law enforcing officer. Attached to his motion as exhibits are affidavits of other young men who relied upon similar promises of the chief of police but finally wound up in the penitentiary.

The petition is in the nature of a writ of error *coram nobis* and comes to this court on writ of error. Similar petitions have frequently been reviewed in this court. *Hawks* v. *People* 398 Ill. 281; *Thompson* v. *People,* 398 Ill. 366; *People* v. *Touhy,* 397 IIIl. 19.

The People filed a motion to strike the petition, which was allowed, and the motion to correct errors stricken. Any facts set forth in the petition which are well pleaded must be taken as admitted by the motion to strike.

This is an appropriate procedure in criminal cases to set aside a conviction obtained by duress or fraud, or where, by some excusable mistake or ignorance of the accused and without negligence on his part, he has been deprived of a defense which he would have made at his trial, and which, if known to the court, would have prevented the conviction. *Thompson* v. *People,* 398 Ill. 366.

The petitioner was not represented by counsel at any stage of his trial.

Plaintiff in error contends that his judgment of conviction is invalid because it was obtained through fraud and duress and in violation of his right to due process of law as guaranteed by the fourteenth amendment to the constitution of the United States.

Lulled into security by the promise of the chief of police, concurred in by the State's Attorney, that he would be placed on probation, no opportunity was afforded plaintiff in error to make the true facts known to the trial court at the time of sentence.

In *Hawks* v. *People,* 398 Ill. 281, we said: "It has been frequently said that the remedy afforded by a writ of error *coram nobis* is almost one of necessity, when great injustice results from the court's lack of knowledge of

facts constituting a defense, and the law affords no other remedy." We believe that situation exists in this case.

We are not unmindful that the plaintiff in error knew all the facts recited in his motion at the time he pleaded guilty; that the common-law record shows all proper procedural requirements prior to the acceptance of the plea of guilty, and that all the matters set forth in the petition are dehors the record. However, we have in mind recent pronouncements of the Supreme Court of the United States. In the case of *Carter* v. *People,* 329 U.S. 173, 67 S. Ct. 216, it was stated: "The solicitude for securing justice thus embodied in the due process clause is not satisfied by formal compliance or merely procedural regularity. It is not conclusive that the proceedings resulting in incarceration are unassailable on the face of the record. A State must give one whom it deprives of his freedom the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface. *Mooney* v. *Holohan,* 294 U.S. 103. * * * Questions of fundamental justice protected by the due process clause may be raised, to use lawyers' language, dehors the record. * * * Wide discretion must be left to the States for the manner of adjudicating a claim that a conviction is unconstitutional. States are free to devise their own systems of review in criminal cases." *Marino* v. *Ragen,* 332 U. S. 561, 68 S. Ct. 240.

Our Federal courts have frequently held that a conviction on a plea of guilty coerced by a Federal law enforcement officer is inconsistent with due process. *Waley* v. *Johnston,* 316 U.S. 101; *Smith* v. *O'Grady,* 312 U.S. 329. It was also held in *Foster* v. *Illinois,* 332 U.S. 134, 67 S. Ct. 1716, that the "due process of law" which the fourteenth amendment exacts from the States is a conception of fundamental justice and is not satisfied by merely formal procedural correctness.

Considering this case from all angles, it appears to us that the rights of plaintiff in error as to due process have been violated and that he has been deprived of his constitutional rights in the denial of a hearing on his petition.

It is hard to believe that all the facts recited in this petition can be true or proved, but it does set forth a *prima facie* case of fraud, duress and coercion used by a law enforcing officer to procure a plea of guilty and a conviction. Plaintiff in error should be given a hearing on his motion to correct errors in fact. The judgment of the circuit court of Marion County is, therefore, reversed and the cause remanded with directions to proceed in a manner consistent with this opinion.

*Reversed and remanded, with directions.*